**BRUNO LAW**
44 North Second Street
P.O. Box 468
Easton, PA 18044
(610) 258-4003
Attorneys for Defendant AO Industries, LLC

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **SNEAKER MATCH, LLC** | : | |
| an Arizona Limited Liability Company | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No.: 1:20-cv-06563 |
| v. | : | |
| | : | **Honorable Mary M. Rowland** |
| **JOHN DOES 1-10** | : | |
| | : | **Magistrate Judge Heather K. McShain** |
| Defendants. | : | |
| | : | |
| v. | : | |
| | : | |
| **AO INDUSTRIES, LLC** | : | |
| | : | |
| | : | |
| Defendant. | : | |

## <u>DEFENDANT AO INDUSTRIES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS PETITION TO DISSOLVE THE PRELIMINARY INJUNCTION</u>

Defendant, AO Industries, LLC ("AO Industries"), by and through its counsel, Bruno Law, hereby files the following Memorandum of Law in Support of its Petition to Dissolve the Preliminary Injunction and in support thereof avers as follows:

# I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Sneaker Match, LLC ("Plaintiff" or "Plaintiff Sneaker Match") is a company that sells tee shirts and other apparel items through its website, www.sneakermatchtees.com. Plaintiff initiated this lawsuit against Defendant John Does 1-10 in an attempt to shut down a foreign "sophisticated counterfeiting operation" from "Vietnam and China" that Plaintiff alleged was infringing upon its intellectual property rights by operating "under a scheme of common ownership and control to create numerous online retail stores under false names and payment accounts to sell clothing products and offer online retail services under a false indication of origin." See Memorandum In Support of Plaintiff's *Ex Parte* Motion for Entry of A Temporary Restraining Order, at pg. 2; see also Amended Complaint, at ¶ 27. To initiate this action, Plaintiff filed an Amended Complaint and an *Ex Parte* Motion for Entry of A Temporary Restraining Order (TRO). This Court granted the *ex parte* TRO and ordered a temporary transfer as to all of the domain names and online marketplaces listed on an exhibit Plaintiff submitted known as Schedule A, which purported to list the aliases of the alleged "sophisticated counterfeiting operation." This Court also granted a temporary asset restraint, expedited discovery, and the right to serve all of the Defendant domains and online marketplaces listed on Schedule A via electronic service of process pursuant to Fed. R. Civ. P. 4(f)(3). Thereafter, this Court entered a Preliminary Injunction, thereby extending the relief granted in the TRO.

Defendant AO Industries, LLC ("Defendant AO Industries") is a Pennsylvania-based company that is owned by a U.S. citizen, Austina Giamber. Defendant AO Industries owns two websites (www.truthorclothing.com and www.truthorclothing.net) that sell tee shirts and apparel items under the brand name, "Truth or Clothing." Defendant AO Industries also owns the Etsy shop, www.etsy.com/shop/freshmatchtees, which sells similar products under the brand name,

"Fresh Match Tees." Plaintiff failed to do its due diligence and wrongfully included AO Industries' sites on Schedule A as purported aliases for the foreign "sophisticated counterfeiting operation." As a result, Defendant AO Industries' sites were wrongfully shut down and its PayPal accounts were frozen during what was expected to be its most profitable time of the year, the holiday season. As soon as Defendant AO Industries realized it had been wrongfully implicated in this lawsuit, it reached out to Plaintiff's counsel and expressed the fact that it had nothing to do with the foreign "sophisticated counterfeiting operation." Plaintiff acknowledged that Defendant AO Industries was not part of any foreign counterfeiting operation but refused to dismiss Defendant AO Industries from the lawsuit based on its contention that Defendant AO Industries had infringed upon Plaintiff's trademarks, "SNEAKER MATCH," and "SNEAKER MATCH TEES" by using the terms in its product descriptions and on its websites. The evidence will show that any use of these terms by Defendant AO Industries was fair use under 15 U.S.C. § 1115(b) because such use was descriptive of the type and category of goods that Defendant AO Industries sells. Defendant AO Industries never used the terms "sneaker match" or "sneaker match tees" to designate the source of its goods. Rather, Defendant AO Industries always represented that its goods were being sold under its brand names, "Truth or Clothing" and "Fresh Match Tees."

Plaintiff failed to set forth sufficient evidence showing that it is likely to succeed on the merits as to its trademark infringement and unfair competition claims against Defendant AO Industries. It further failed to meet its burden to prove that the remaining factors of the test for a TRO and preliminary injunction could be met. Importantly, even after Plaintiff's counsel was made aware that Defendant AO Industries' domains and online marketplaces had been wrongfully shut down pursuant to the TRO, Plaintiff still went ahead and filed the Motion for

Entry of Preliminary Injunction without providing any notice to Defendant AO Industries. Defendant AO Industries was denied its right to be heard pursuant to Fed. R. Civ. P. 65 (a)(1) and (b). For all of these reasons, Defendant AO Industries now moves this Court to dissolve/terminate the Preliminary Injunction and award Defendant AO Industries with all monies (of at least $10,000.00) secured by a bond, which amount was previously determined by this Court to be adequate for the payment of such damages any person may be entitled to recover for the wrongful restraint under the Orders. See TRO, ¶ 11; see also Preliminary Injunction Order, ¶ 11.

## II.   STATEMENT OF FACTS

Plaintiff Sneaker Match, LLC is an Arizona Limited Liability Company. Plaintiff Sneaker Match is owned by Alejandro Rodriguez. *See* Declaration of Alejandro Rodriguez, attached as Exhibit A to the Memorandum in Support of Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a Temporary Injunction, Temporary Transfer of the Domain Names, Temporary Asset Restraint, and Expedited Discovery. Defendant AO Industries, LLC is a Pennsylvania Limited Liability Company with a registered business address of 204 Pierce Street, Kingston, Pennsylvania 18704. Defendant AO Industries, LLC is owned by Austina Giamber.

Defendant AO Industries owns the domains, www.truthorclothing.com and www.truthorclothing.net, as well as the Etsy shop, www.etsy.com/shop/freshmatchtees. Through these sites, Defendant AO Industries sells tee shirts, sweatshirts, and other apparel items that are part of the niche trend known as "sneaker matching," which is a popular trend in the

streetwear, hip-hop, skater, and sneakerhead[1] community whereby consumers make fashion statements by finding tee shirts and other apparel items that match the color and style of their sneakers. The trend of "sneaker matching" (i.e. matching apparel to the color and style of one's sneakers) has been popular since the 1980s but has grown in popularity in the past few years and is often referenced in pop culture, songs, and magazine articles. See e.g. "Sean Wotherspoon and Nike Are Releasing Matching Hats and Tees," March 23, 2018 (SneakerNews.com), see also article entitled "The 7 BEST Tips When Matching Sneakers to Your Outfit (IN 2020!), and music lyrics attached hereto collectively as Exhibit A. The two brand names under which Defendant AO Industries sells its goods are "**TruthorClothing**" (www.truthorclothing.com and www.truthorclothing.net) and "**Fresh Match Tees**" (www.etsy.com/shop/freshmatchtees). All three of Defendant AO Industries' websites and the social media pages advertising its sites (i.e. Facebook and Instagram) clearly and consistently refer to the two brands owned by Defendant AO Industries, i.e. "TruthorClothing" and "Fresh Match Tees," as the *source* of the products sold on the sites.

On November 17, 2020, Plaintiff Sneaker Match initiated this action against Defendants John Does 1-10[2] by filing an Amended Complaint and an *Ex Parte* Motion for Entry of A Temporary Restraining Order ("TRO"), including a Temporary Injunction, a Temporary Transfer of Domain Names, an Temporary Asset Restraint, Expedited Discovery, and a Motion for

---

[1] A "sneakerhead" is someone who collects, trades, or admires sneakers as a hobby. See https://www.ix.co/en-US/blog/the-rise-of-the-sneakerhead-culture. Many sneakerheads enjoy studying the history of sneakers and identifying market trends. See id. Sneakerhead culture originated in the 1970s and exploded in the 1980s when the sportswear and hip-hop culture collided and true sneakerhead trends, such as "sneaker matching" were born. Id. The sneakerhead community is very diverse and has grown exponentially in recent years. See id.

[2] Defendant AO Industries, LLC was not a named defendant in Plaintiff's Amended Complaint.

Electronic Service of Process Pursuant to Fed. R. Civ. P. 4(f)(3) in the United States District Court for the Northern District of Illinois. In its Memorandum in Support of its *Ex Parte* Motion for Entry of A Temporary Restraining Order ("TRO"), Plaintiff Sneaker Match alleged that it was requesting temporary *ex parte* relief "based on an action for trademark infringement, counterfeiting, false designation of origin, and copyright infringement," against Defendants who "run a sophisticated counterfeiting operation" and "operat[e] under several aliases and at several domain names." Memorandum In Support of Plaintiff's *Ex Parte* Motion for Entry of A Temporary Restraining Order, at pgs. 1-2. Specifically, Plaintiff claimed that Defendants "are promoting, advertising, marketing, distributing, offering for sale, and selling products, including clothing and fashion accessories, using infringing and counterfeit versions of Sneaker Match's federally registered trademarks, unauthorized copies of Sneaker Match's federally registered copyrighted designs, or both (collectively, the "Unauthorized Sneaker Match Products"), through, at least, the fully interactive, e-commerce stores operating under several aliases and at several domain names." Memorandum In Support of Plaintiff's *Ex Parte* Motion for Entry of A Temporary Restraining Order, at pg. 1.

Plaintiff argued that it was entitled to the extraordinary relief of an *ex parte* TRO on the basis that Defendants were part of a foreign "sophisticated counterfeiting operation" selling Unauthorized Sneaker Match Products. See Memorandum In Support of Plaintiff's *Ex Parte* Motion for Entry of A Temporary Restraining Order, at pg. 2; see also Amended Complaint, at ¶ 27 ("Defendants are residents of Vietnam and China who operate under a scheme of common ownership and control to create numerous online retail stores under false names and payment accounts to sell clothing products and offer online retail services under a false indication of origin.") Plaintiff supported its "sophisticated counterfeiting operation" allegation by attaching

Schedule A to its Amended Complaint, which sets forth an extensive list of domain names, Etsy accounts, and EBay accounts that Plaintiff purports are part of Defendants' "sophisticated counterfeiting operation." See Schedule A ("Defendants' Aliases"), attached as Exhibit A to Plaintiff's Amended Complaint. **Two sites operated by Defendant AO Industries, LLC (www.truthorclothing.com and www.etsy.com/shop/freshmatchtees) are incorrectly listed on Schedule A.** Plaintiff further supported its allegations that it was entitled to the extraordinary relief of an *ex parte* TRO by submitting a Declaration of its owner, Alejandro Rodriguez, and exhibits thereto. *See* Declaration of Alejandro Rodriguez, attached as Exhibit A to the Memorandum in Support of Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a Temporary Injunction, Temporary Transfer of the Domain Names, Temporary Asset Restraint, and Expedited Discovery.

On November 18, 2020, this Court entered an *ex parte* sealed TRO without notice to Defendant AO Industries and granted all of Plaintiff's Motions in their entirety by ordering a temporary injunction, temporary transfer of the domain names, temporary asset restraint, expedited discovery, and the right to serve Defendants via electronic service of process pursuant to Fed. R. Civ. P. 4(f)(3). *See* Sealed Temporary Restraining Order. The Court granted the *ex parte* TRO as to all of the domain names and online marketplaces listed on Schedule A. See id., at ¶ 7(a). The *ex parte* sealed TRO was to remain in effect for fourteen (14) days, with an ending date of December 2, 2020. See id., at ¶ 13. In the sealed TRO, the Court specified that "Sneaker Match shall deposit with the Court Ten Thousand Dollars ($10,000.00), either cash or surety bond, as security, which amount was determined adequate for the payment of such damages *as any person may be entitled to recover as a result of a wrongful restraint hereunder*, such bond to

be deposited with the Court once in-person civil case hearings resume." See id., at ¶ 11 (italics added).

Shortly after the TRO was granted, both of Defendant AO Industries' sites (www.truthorclothing.com and www.etsy.com/shop/freshmatchtees) were shut down. On or about November 25, 2020, Austina Giamber visited AO Industries' website, www.truthorclothing.com, and was surprised and bewildered to find that her company's site had been shut down without her consent. She assumed that someone had stolen her domain. On that same day, in an attempt to repair the damage that had already been done in the way of lost sales and lost consumer good will, Defendant AO Industries registered www.truthorclothing.net and reloaded the content of the shut-down website onto this new domain. Defendant AO Industries then changed the url link listed on its Instagram handle and other advertising sites in order to direct to consumers to www.truthorclothing.net instead of the inoperable www.truthorclothing.com site.

On or about November 26, 2020, Austina Giamber again visited www.truthorclothing.com and saw that the Official Court Notice and related documents, including the Amended Complaint, Proposed Summons, Schedule A – Defendants_Aliases, and the Sealed Temporary Restraining Order, had been uploaded onto her domain in place of her company's website. As soon as Austina realized that the reason her company's website had been removed without her consent was because her company had been wrongfully implicated in a lawsuit, she called and emailed Plaintiff's counsel, Attorney Amanda Osorio, in an attempt to clarify that neither she nor her company, Defendant AO Industries, LLC, was part of any foreign "sophisticated counterfeiting operation" that was allegedly infringing upon Plaintiff's intellectual property rights. Austina further explained that none of Defendant AO Industries' sites (i.e.

www.truthorclothing.com, www.truthorclothing.net, and www.etsy.com/shop/freshmatchtees) were infringing upon any Plaintiff's intellectual property rights and that the shut-down of the sites was causing financial and reputational harm to her company. Austina also asked that Attorney Osorio provide her with evidence of the allegedly infringing material. Attorney Osorio failed to provide Austina with the requested evidence.

On December 1, 2020, Attorney Osorio filed an *ex parte* Motion for Entry of Preliminary Injunction on behalf of Plaintiff without providing notice to Defendant AO Industries. Despite the fact that Austina had reached out to Attorney Osorio six (6) days before the filing of this Motion, Attorney Osorio failed to provide her with notice that the Motion for Preliminary Injunction had been filed or that a hearing on the matter had been scheduled, thereby effectively denying Defendant AO Industries its right to be heard, in violation of Fed. R. Civ. P. 65(a)(1) and (b). Notably, Plaintiff's Motion for Preliminary Injunction and Motion in Support thereto was not posted to www.truthorclothing.com until *after* the Preliminary Injunction was entered.

On December 3, 2020, this Court entered the Preliminary Injunction Order. The Order provides that "Sneaker Match shall deposit with the Court Ten Thousand Dollars ($10,000.00), as ordered in the TRO, and such bond shall remain with the Court until a Final disposition of this case or until this Preliminary Injunction is terminated." See id., at ¶ 11. The Order further provides that "[a]ny Defendants that are subject to this Order may appear and move to dissolve or modify the Order as permitted by and in compliance with the Federal Rules of Civil Procedure and Northern District of Illinois Local Rules." See id., at ¶ 12.

On December 4, 2020, Defendant AO Industries' counsel, Alyssa M. Bruno, Esq., called Amanda Osorio, Esq. to discuss the case. During the call, Attorney Bruno expressed the fact that Defendant AO Industries had been wrongfully sued in this case because Defendant AO

Industries did not infringe upon Plaintiff's copyrights or trademarks in any way. Attorney Osorio confirmed that the only claim Plaintiff is continuing to assert against Defendant AO Industries is a claim for trademark infringement. Attorney Bruno requested that Attorney Osorio provide Defendant AO Industries with all evidence supporting Plaintiff's position that Defendant AO Industries' sites ([www.truthorclothing.com](www.truthorclothing.com), [www.truthorclothing.net](www.truthorclothing.net), and [www.etsy.com/shop/freshmatchtees](www.etsy.com/shop/freshmatchtees)) were allegedly infringing upon Plaintiff's trademark rights. On December 9, 2020, Attorney Bruno sent a follow-up email to Attorney Osorio stating that Defendant AO Industries was wrongfully sued in this case and requesting that Plaintiff dismiss the case against Defendant AO Industries with prejudice. On that same day, Attorney Osorio sent two (2) emails to Attorney Bruno in which she relayed that Plaintiff would not voluntarily dismiss Defendant AO Industries from the lawsuit with prejudice. Attorney Osorio also included a link containing screenshots that allegedly support Plaintiff's trademark infringement claim against Defendant AO Industries.

### III.    ARGUMENT

Upon review of the evidence submitted to this Court in support of Plaintiff's *Ex Parte* Motion for TRO and Motion for Preliminary Injunction, it is clear that Plaintiff has failed to meet its burden showing that it is likely to succeed on the merits in regards to its trademark infringement and unfair competition claims against Defendant AO Industries. Defendant AO Industries' use of the terms "sneaker match" and "sneaker match tees" squarely fall within the descriptive fair use defense set forth in 15 U.S.C. § 1115(b) and does not infringe upon Plaintiff's rights in either of its Plaintiff's two federally registered word marks, "SNEAKER MATCH" and "SNEAKER MATCH TEES." There is no dispute that Defendant AO Industries at times used the words "sneaker match" and "sneaker match tees," and variations thereof to

describe its products in the product description sections of the sites and in slogans describing the type of goods sold; however, Defendant AO Industries never once used these terms in a trademark sense (i.e. to identify the *source* of its goods). Rather, all of Defendant AO Industries' websites (www.truthorclothing.com, www.truthorclothing.net, and www.etsy.com/shop/freshmatchtees) and social media pages advertising the sites (i.e. Facebook and Instagram) clearly and consistently refer to the two brands owned by Defendant AO Industries, i.e. "TruthorClothing" and "Fresh Match Tees," as the *source* of the products sold on its sites. See Screenshots from www.truthorclothing.com, www.etsy.com/shop/freshmatchtees, Truth Or Clothing Instagram, and Truth Or Clothing Facebook, attached hereto as Exhibit B. Because Defendant AO Industries did not use the terms "sneaker match" or "sneaker match tees" to identify the source of its products or to represent that the products sold on its sites originated or were somehow affiliated with Plaintiff Sneaker Match, LLC, and instead only used the terms "sneaker match" and "sneaker match tees" in a descriptive sense, Defendant AO Industries' use of the terms is protected under the fair use defense set forth in 15 U.S.C. § 1115(b). See SportFuel, Inc. v. PepsiCo, Inc., 932 F. 3d 589, 595 (7th Cir. 2019) (affirming grant of summary judgment in favor of defendant for its use of the slogan "Gatorade The Sports Fuel Company" on the basis that such use was descriptive; thus, the slogan was a fair use protected by the Lanham Act and did not infringe upon plaintiff's rights in its registered and incontestable trademark for "SportFuel"). Accordingly, Plaintiff cannot succeed on the merits of the underlying claim, and the Preliminary Injunction must be terminated with respect to Defendant AO Industries.

Defendant AO Industries was wrongfully denied an opportunity to be heard on this matter pursuant to Fed. R. Civ. P. 65(a)(1) and (b) before its websites were shut down, its PayPal account frozen, its bank accounts were put at risk, and lasting harm was caused to the goodwill

amongst its customers as a result of the *ex parte* TRO and Preliminary Injunction that was entered against it. Defendant AO Industries now moves this Court to dissolve the Preliminary Injunction and award Defendant AO Industries with all monies (of at least $10,000.00) secured by a bond, which amount was previously determined by the Court to be adequate for the payment of such damages any person may be entitled to recover for the wrongful restraint under the Orders. See TRO, ¶ 11; see also Preliminary Injunction Order, ¶ 11.

### A. Standard for Temporary Restraining Order and Preliminary Injunction

A party seeking to obtain a preliminary injunction must establish: (1) that he is likely to succeed on the merits; (2) that he is *likely* to suffer irreparable harm in the absence of preliminary relief; and (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. See <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 20 (U.S. 2008). The United States Supreme Court has explained that the proper standard for preliminary injunction "requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." <u>Id.</u>, at 375. The court went on to state that the issuing of a preliminary injunction based only on a *possibility* of irreparable harm, rather than a *likelihood* of irreparable harm, "is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." <u>Id.</u>, at 375-76.

In the present case, it is clear that Plaintiff has failed to demonstrate that it can meet any of the four prongs required for the extraordinary relief of a preliminary injunction to be appropriately entered against Defendant AO Industries. Consequently, the Preliminary Injunction was wrongfully entered against Defendant AO Industries, and Defendant AO Industries is entitled to recover all monies (of at least $10,000.00) secured by a bond, which

amount was previously determined by the Court to be adequate for the payment of such damages and costs that any person may be entitled to recover for the wrongful restraint under the Orders. See Fed. R. Civ. P. 65(c); TRO, ¶ 11; see also Preliminary Injunction Order, ¶ 11.

**B.**     **Plaintiff Sneaker Match Cannot Succeed on the Merits Because Defendant AO Industries' Use of the Terms of "Sneaker Match" and "Sneaker Match Tees" was Descriptive and Falls within the Fair Use Defense.**

Plaintiff's Complaint alleges unfair competition and false designation of origin in violation of the Lanham Act (15 U.S.C. § 1125(a)), trademark infringement under the Lanham Act (§32 (1) of 15 U.S.C. § 1114(1)), a violation of the Anti-cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)), and copyright infringement (17 U.S.C. §§ 106 and 501) against Defendants John Does 1-10. Nevertheless, Attorney Osorio confirmed on the phone and via email that Plaintiff was only pursuing an unfair competition and trademark infringement claim against Defendant AO Industries.

The Lanham Act allows those who employ trade or service marks to register the marks for exclusive use in commerce. See SportFuel, Inc., 932 F. 3d at 595 (citing KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117 (U.S. 2004)). "The holder of a registered mark … has a civil action against anyone employing an imitation of it in commerce when 'such use is likely to cause confusion, or to cause mistake, or to deceive.'" Id. (quoting 15 U.S.C. § 1114(1)(a)). "Additionally, the Act provides trademark-holders a cause of action against those who make a false designation of origin for a mark." Id. (citing 15 U.S.C. § 1125(a)). "To prevail on either claim, a plaintiff must establish that (1) its mark is protectable

and (2) the defendant's use of the mark is likely to cause confusion among consumers." Id. (citing CAE, Inc. v. Clean Air Engineering, Inc., 267 F.3d 660, 673-74 (7th Cir. 2001)).

Importantly, the Lanham Act also provides for several affirmative defenses to a plaintiff's claims, including the "fair use" defense, which is applicable in the instant case. See SportFuel, Inc., 932 F. 3d at 595 (citing 15 U.S.C. § 1115(b)). The fair use defense allows competitors and other individuals to use otherwise trademarked language in a descriptive sense. See id.; see also KP Permanent Make-Up, Inc., 543 U.S. 111 at 117; Packman v. Chi. Tribune Co., 267 F.3d 628, 639 (7th Cir. 2001); Sunmark, Inc. v. Ocean Spray Cranberries, Inc., 64 F.3d 1055, 1058 (7th Cir. 1995). A defendant in a trademark infringement action may successfully invoke the fair use defense by demonstrating that the alleged infringement, "is a use, otherwise than as a mark … which is descriptive of and used fairly and in good faith only to describe the goods or services of such party.'" SportFuel, Inc., 932 F. 3d at 595 (citing Sorensen v. WD-40 Co., 792 F.3d 712, 722 (7th Cir. 2015) (quoting 15 U.S.C. § 1115(b)(4)). The fair use defense "is based on the principle that no one should be able to appropriate descriptive language through trademark registration." Sorensen, 792 F.3d at 722 (citing Packman v. Chi. Tribune Co., 267 F.3d 628, 639 (7th Cir. 2001)). In Sorensen, the court used the example of the hypothetical producer of "Crunchy" brand potato chips and explained that "[t]he hypothetical producer of "Crunchy" brand potato chips, for example, cannot block its competitors from describing their chips as crunchy. It may, though, be able to block its competitors from selling chips that are *branded* "Crunchy." Sorensen, 792 F.3d at 722. In sum, to prevail on a fair use defense, a defendant must show that: "(1) it did not use the mark as a trademark; (2) the use is descriptive of its goods or services; and (3) it used the mark fairly and in good faith." See SportFuel, Inc., 932 F. 3d at 595 (citing Sorensen, 792 F.3d at 722; Packman, 267 F.3d at 639).

i.    **Defendant AO Industries Did Not Use "Sneaker Match" or "Sneaker Match Tees" As a Source Identifier (i.e. Trademark).**

Defendant AO Industries did not use the terms "sneaker match" or "sneaker match tees" as trademarks and at all times represented that its goods were being sold under its two brand names, "Truth or Clothing" and "Fresh Match Tees." Defendant AO Industries consistently used its own logos (i.e. "Truth or Clothing" logo and "Fresh Match Tees" logo) in association with its goods on its websites and social media channels and always referred to its company brand names, "Truth or Clothing" and "Fresh Match Tees," as the seller of its products.

Word or phrases only function as trademarks in limited instances where "they are used by a source of a product to identify itself to the public as the source of its product and to create in the public consciousness an awareness of the uniqueness of the source and of its products." Sorensen, 792 F.3d at 722-23 (quoting Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 953 (7th Cir. 1992)). Courts look to multiple factors on how a defendant employees a challenged term or phrase in order to determine whether the term or phrase is being used as a source indicator and therefore as a trademark. See SportFuel, Inc., 932 F. 3d at 596.

In SportFuel, Inc., the court ruled that defendant Gatorade had used the term at issue, "Sports Fuel" in a descriptive sense, rather than as a source indicator (i.e. trademark), when it included the term in its slogan stating "Gatorade The Sports Fuel Company." See id. In reaching that conclusion, the court referenced three photos showing the slogan as it appeared on an in-store display, on product packaging, and in two advertisements. See id., at 598. The court noted that defendant Gatorade rarely used the term "Sports Fuel" directly on product packaging and that when the slogan appeared on in-store displays and advertisements, it appeared "almost as a subtitle" to the Gatorade house mark, which was much more prominently located. See id.

Ultimately, the court concluded that there was nothing about defendant Gatorade's use in this context that suggested consumers would view its use of the term "Sports Fuel" as a source indicator. See id. Thus, the court affirmed the district court's determination that defendant Gatorade did not employ the term "Sports Fuel" as a trademark through its use of the "Gatorade The Sports Fuel Company" slogan. See id.

Similar to the defendant in SportFuel, Inc., Defendant AO Industries did not use the terms "sneaker match" and "sneaker match tees" to indicate the source of its products. Any use of the phrase "sneaker match" or "sneaker match tees" by Defendant AO Industries was only to describe the category of products being sold, not to designate the brand selling the product.

### ii. Defendant AO Industries Used "Sneaker Match" and "Sneaker Match Tees" Descriptively.

Defendant AO Industries used "sneaker match" and "sneaker match tees" descriptively, rather than suggestively, and therefore not as a trademark.

"Trademark law awards trademark protection to various categories of words, terms, and phrases if consumers rely on those marks to identify and distinguish one company's goods or services from those of others." Platinum Home Mort. Corp. v. Platinum Fin. Grp., Inc., 149 F.3d 722, 727 (7th Cir. 1998). "Marks are classified into five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful." Id.

Generally, trademark law does not provide trademark protection for terms that are generic or merely descriptive of its products or services. See SportFuel, Inc., 932 F.3d at 589. "[T]his rule prevents sellers from branding their product with a name or term that the public uses to identify the category of items." Id. The rule ensures that competitors can market their products by accurately describing them. See Uncommon, LLC v. Spigen, Inc., 926 F.3d 409,

420 (7th Cir. 2019). The exclusive use of a descriptive mark is not allowed under trademark law because "[a] seller must not be permitted to appropriate as the name of its brand a term by which the public knows the product category to which the brand belongs, for that would make it difficult for other sellers of the same product to describe their brands, and this would impair competition." Custom Vehicles, 476 F.3d at 483. An exception to the general rule that descriptive terms are not protectable as trademarks is that a descriptive term may be protectable if it has acquired a "secondary meaning," that is, "the mark has grown distinctly and 'uniquely associated with the original seller." Uncommon, 926 F.3d at 420. However, "[a] descriptive term only acquires a secondary meaning after most consumers think of the term as the name of the product instead of as descriptive of the product." SportFuel, Inc., 932 F.3d at 599 (citing Packman, 267 F.3d at 639). It takes significant time and often aggressive advertising efforts for the owner of a descriptive mark to establish secondary meaning. See ids. Notably, the validity of a mark can be challenged at any time. See Door Systems, Inc. v. Pro-Line Door Systems, Inc., 83 F.3d 169, 172 (7th Cir. 1996). Although a descriptive mark that has been successfully registered with the United States Patent and Trademark Office (USPTO) enjoys the presumption that it has been validly registered, "the presumption of validity that federal registration confers evaporates as soon as evidence of invalidity is presented." Door Systems, Inc., 83 F.3d at 172; see also Custom Vehicles, 476 F.3d at 486; see also Uncommon, 926 F. 3d at 421.

In contrast to generic and descriptive terms to which the law affords no trademark protection, the law affords automatic trademark protection to "suggestive, arbitrary, and fanciful terms, which are inherently distinctive." Id. (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (U.S. 1992)). Notably, the "line between descriptiveness and suggestiveness can be difficult to draw." Id. (citing Uncommon, 926 F. 3d at 421). "A mark is descriptive when 'it

describes the product category to which the brand belongs.'" <u>Uncommon</u>, 926 F. 3d at 421 (quoting <u>Custom Vehicles</u>, 476 F.3d 481, 483 (7th Cir. 2007)). "A term need not 'bring to mind the product in question' to be descriptive, nor must it 'depict the product itself.'" <u>Uncommon</u>, 926 F. 3d at 423 (citing <u>Quaker Oats Co.</u>, 978 F.2d at 952)). Rather, a mark is descriptive if it "refers to a *characteristic* of the product." <u>Id.</u> (citing <u>Custom Vehicles</u>, 476 F.3d at 483 (holding that "Work-N-Play" as a name for vehicles with convertible interiors was descriptive: not because consumers quickly associate "Work-N-Play" with interior-convertible vans, but because the vans were in fact "usable both for work and play.") A suggestive mark, on the other hand, "does not directly and immediately describe an aspect of the goods," rather they "require an observer or listener to use imagination and perception to determine the nature of the goods." <u>SportFuel, Inc.</u>, 932 F.3d at 599 (citing <u>Uncommon</u>, 926 F. 3d at 421). However, the fact that a phrase is unfamiliar and "requires a hearer to think about its meaning" does not necessarily mean it is suggestive. <u>SportFuel, Inc.</u>, 932 F.3d at 599.

Because the line between descriptiveness and suggestiveness can be difficult to draw, courts look to a variety of factors to distinguish between descriptive and suggestive terminology; however, two factors are particularly helpful in this case. See <u>SportFuel, Inc.</u>, 932 F.3d at 599. First, courts look to how and how often the relevant *market* uses the word or phrase in question. See <u>id.</u>; see also <u>Uncommon</u>, 926 F. 3d at 421; see also <u>Bliss Salon Day Spa v. Bliss World LLC</u>, 268 F.3d 494, 497 (7th Cir. 2001) (holding that even if the mark "BLISS" did not depict haircare products as a linguistic matter, the fact that many players in the beauty-care market use "BLISS" in association with their products and services meant that the mark was functionally descriptive). Second, courts employ the "imagination test," where they ask whether the word or phrase imparts information about the product or service directly or rather requires 'some operation of

the imagination to connect it with the goods.'" See <u>SportFuel, Inc.</u>, 932 F.3d at 599; see also <u>Uncommon</u>, 926 F. 3d at 422.

In the present case, both factors support Defendant AO Industries' position that its use of the terms "sneaker match" and "sneaker match tees" is descriptive in 1) its Instagram account profile (@truth_or_clothing), which has the "Truth or Clothing" logo as the profile icon, the words "Truth or Clothing" as the company name in bold text, and then the words "Sneaker Match Clothing" underneath in the description bio box; 2) its websites (www.truthorclothing.com and www.truthorclothing.net), which state the brand name of the shop, "truthorclothing" in large stylized font and then a byline in small print stating that the shop sells "Premium Sneaker Match Clothing and Accessories"; 3) its "Truth or Clothing" Facebook page which has the "Truth or Clothing" logo as the profile icon, the company name listed as "Truth or Clothing" in bold text, a cover photo showing the "Truth or Clothing" logo and the words "Sneaker Matching Tees, Hoodies, and More," and then in the About section a description slogan stating that the store sells "Urban Street Wear, Sneaker Match Clothing for Men and Women"; and 4) its websites and "Fresh Match Tees" Etsy shop, which has the "Fresh Match Tees" logo as the profile icon, the company name, "FreshMatchTees" listed in bold text, a cover photo showing the "Fresh Match Tees" logo and the words "Fresh Tees to Match Your Favorite Kicks," and then a few product descriptions which include the term "sneaker match," such as the phrase "Drippin Lips Unisex Sneaker Match Shirt Made for Air Jordan 3 Retro 'Varsity Royal' Sneaker Tee - $19.99." See Exhibit B.  To start, it indisputable that many of Plaintiff's competitors and other players within the streetwear and sneakerhead market regularly invoke the words "sneaker match" and "sneaker match tees" to describe the products they sell and to refer to the "sneaker match" trend generally.  Moreover, the general public and the niche, yet

significantly large subculture of sneakerhead consumers have come to understand that the words "sneaker match" and "sneaker match tees" impart information regarding the *style* and *category of product* being sold. Additionally, in the search bars of Etsy, the terms "sneaker match" and "sneaker match tees" are listed with other descriptive terms, thereby further demonstrating that "sneaker match" and "sneaker match tees" describe a product category. This widespread industry use supports AO Industries' argument that it used "sneaker match" and "sneaker match tees" descriptively. See SportFuel, Inc., 932 F.3d at 599; see also Uncommon, 926 F. 3d at 422. Second, the use of "sneaker match" and "sneaker match tees" in product descriptions and the slogans, "Sneaker Match Clothing," and "Premium Sneaker Match Clothing and Accessories," clearly imparts information concerning the category of goods that Defendant AO Industries sells. See id. It requires no imaginary leap to understand that a company selling "sneaker match clothing" is selling a variety of apparel products designed to match sneakers. For the aforementioned reasons, it is clear that terms "sneaker match" and "sneaker match tees" are descriptive and are being used by AO Industries to describe the product category that it sells goods in rather to denote Plaintiff Sneaker Match, LLC or to suggest an affiliation or identity between the two sellers. See ids.; see also Door Systems, Inc., 83 F.3d at 173.

### iii. Marks were used fairly and in good faith.

Defendant AO Industries used "sneaker match" and "sneaker match tees" fairly and in good faith. Courts determine a defendant's good faith by looking at their subjective purpose in using the terms or phrase. See SportFuel, Inc., 932 F.3d at 600. Here, Defendant AO Industries' purpose in using the terms "sneaker match" and "sneaker match tees" in its product descriptions and slogans, "Sneaker Match Clothing," and "Premium Sneaker Match Clothing and Accessories," was to accurately describe the category of goods that it sells. Plaintiff has failed to

set forth any evidence demonstrating that Defendant AO Industries acted in bad faith by using these product descriptions and descriptive slogans; thus, it cannot meet its burden under this prong of the analysis. See id., at 601.

For the aforementioned reasons, it is clear that AO Industries' use of the terms "sneaker match" and "sneaker match tees" falls squarely within the fair use defense of 15 U.S.C. § 1115(b).

### iv. No "likelihood of confusion" analysis is necessary because the fair use defense applies.

Because the fair use defense applies, it is unnecessary to conduct an analysis as to whether Defendant AO Industries' use of the terms "sneaker match" and "sneaker match tees" in its product descriptions and descriptive slogans on its websites presents a risk of consumer confusion regarding Plaintiff's marks. See SportFuel, Inc., 932 F. 3d at 595. Nevertheless, even if it were necessary to conduct a likelihood of confusion analysis, Plaintiff has not submitted a single piece of evidence showing that consumers were confused or are likely to be confused as to the source of Plaintiff Sneaker Match's goods versus the source of Defendant AO Industries' goods, which are marketed under the brand names "Truth or Clothing" and "Sneaker Match Tees." In KP Permanent Make-Up, Inc., the U.S. Supreme Court ruled that a party raising the statutory affirmative defense of fair use to a claim of trademark infringement, 15 U.S.C. § 1115(b)(4), **does not have** the burden to negate any likelihood that the practice complained of will confuse consumers about the origin of the goods or services affected. See id., 543 U.S. at 121-22. In fashioning this ruling, the court made clear that "[s]ince the burden of proving likelihood of confusion rests with the plaintiff, and the fair use defendant has no free-standing need to show confusion unlikely, it follows … that some possibility of consumer confusion must

be compatible with fair use, and so it is." Id. Thus, even if Plaintiff were to prove some possibility of consumer confusion, this factor would not have any effect on the outcome because the fair use defense still shields Defendant AO Industries from any liability. See id.

For all of the aforementioned reasons, it is clear that Plaintiff has failed to prove that its case against Defendants AO Industries for unfair competition or trademark infringement has a likelihood of success on the merits. See KP Permanent Make-Up, Inc., 543 U.S. at 121-24. As such, the Preliminary Injunction against AO Industries must be dissolved and terminated immediately.

### C. Plaintiff has failed to show that it is likely to suffer irreparable harm in the absence of preliminary relief against Defendant AO Industries.

In addition to failing to show a likelihood of success on the merits, Plaintiff has also failed to set forth any evidence showing that he is *likely* to suffer irreparable harm in the absence of preliminary relief being entered against Defendant AO Industries. See Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (U.S. 2008). It is not sufficient for Plaintiff to baldy assert that "Defendants' unauthorized use" of the terms "sneaker match" and "sneaker match tees" "has and continues to irreparably harm Sneaker through diminished goodwill and brand confidence, damage to Sneaker Match's reputation, and loss of future sales." See Memorandum In Support of *Ex Parte* Motion for Entry of a TRO, at 12. Likewise, Plaintiff's general allegation that "defendants' advertising and work to increase traffic to their websites is and will continue to permanently damage Sneaker Match's own SEO and website traffic it has worked to build over the past six years" does not establish that Plaintiff is *likely* to suffer irreparable harm in the absence of preliminary relief being entered against Defendant AO Industries.

### D. Plaintiff has failed to show that the balance of equities tips in its favor against Defendant AO Industries.

The equities in this case clearly tip in favor of dissolving the Preliminary Injunction against Defendant AO Industries. Defendant AO Industries has had its websites disabled without its consent, its PayPal accounts frozen, its bank accounts put at risk, and its livelihood jeopardized during what was supposed to be its most profitable time of the year, the holiday season. Defendant AO Industries was not provided with notice or an opportunity to defend itself before this Court entered the TRO and Preliminary Injunction against it, even after Plaintiff's counsel was aware that Defendant AO Industries intended to defend itself in this matter. Critically, Defendant AO Industries' use of the terms "sneaker match" and "sneaker match tees" falls squarely within the fair use defense set forth in 15 U.S.C. § 1115(b). Plaintiff cannot show that the balance of equities tips in its favor against Defendant AO Industries.

### E. Plaintiff has failed to show that an injunction is in the public's interest.

Plaintiff cannot show that an injunction against Defendant AO Industries is in the public's interest because the public has an undeniable interest in supporting free trade and competition. Defendant AO Industries' use of the terms "sneaker match" and "sneaker match tees" falls squarely within the descriptive fair use defense of 15 U.S.C. § 1115(b), and it would not further the public's interest to enjoin a party from exercising its right to use accurate terminology to describe the type and category of goods it sells. See Uncommon, LLC v. Spigen, Inc., 926 F.3d 409, 420 (7th Cir. 2019).

### IV. DEFENDANT AO INDUSTRIES IS ENTITLED TO DAMAGES UNDER FED. R. CIV. P. 65(C) FOR THE WRONGFUL RESTRAINT

Plaintiff has failed to demonstrate that it can meet any of the four prongs required for the extraordinary relief of a TRO or preliminary injunction to be appropriately entered against Defendant AO Industries. Consequently, the TRO and Preliminary Injunction were wrongfully entered against Defendant AO Industries, and Defendant AO Industries is entitled to recover all monies (of at least $10,000.00) secured by a bond, which amount was previously determined by the Court to be adequate for the payment of such damages and costs that any person may be entitled to recover pursuant to Fed. R. Civ. P. 65(c) for the wrongful restraint under the Orders. See Fed. R. Civ. P. 65(c); TRO, ¶ 11; see also Preliminary Injunction Order, ¶ 11.

## V. CONCLUSION

Plaintiff failed to meet its burdens of proof and persuasion to show that Defendant AO Industries should be restrained under a TRO and Preliminary Injunction. Defendant hereby moves this Honorable Court to dissolve and terminate the Preliminary Injunction against Defendant AO Industries and to order that Defendant AO Industries shall recover all monies (of at least $10,000.00) secured by a bond, which amount was previously determined by the Court to be adequate for the payment of such damages and costs that any person may be entitled to recover pursuant to Fed. R. Civ. P. 65(c) for the wrongful restraint under the Orders.

Respectfully submitted,

**BRUNO LAW**

BY: _s/ Alyssa M. Bruno_
ALYSSA M. BRUNO, ESQ.
44 North 2nd Street – P.O. Box 468
Easton, PA 18044-0468
(610) 258-4003 telephone
(610) 258-1943 facsimile
abruno@brunolawfirm.com
Attorney for Defendant AO Industries, LLC

DATED: December 16, 2020

24